My name is Therese Cannata. I represent the plaintiff, Kingman Reef Atoll Investments, LLC. We are the appellant. For the sake of brevity this morning, I am going to, when I refer to the plaintiff, I may also refer to the Fuller Leo family, who are the predecessors in interest here, and I think it will be a little bit easier and quicker to say as well. This appeal is about a claim of interest by the United States government to a remote, privately owned property located about 1,000 miles south of the state of Hawaii, and we are talking also here today about a timeline of events from 1922 to ending in late 2000. The essential legal issue presented here is whether a private property owner should be deprived, based on the statute of limitations, of an opportunity to prove in court its right to an order quieting title to property under the Quiet Title Act. There are, in this case, in the issue that's given our limitation of time, and by the way, Your Honor, I apologize. I would like to reserve three minutes for rebuttal. There are three, I think, sort of timeline issues which are also directly linked to the appellate issues before this Court. One is the notice and accrual of the Quiet Title Act, and that would be called the first notice, which I believe the government alleges occurred in 1934, or at the latest, 1938. The other is whether or not that notice was abandoned, such as to extinguish the earlier notice, and so that a new claim of quiet title could thereafter be accrued. And the third is the second notice and accrual, which we believe occurred, and we believe that was really the first notice, which was in December of 2000, when the United States government took the property, the Kingman Reef, to form a national wildlife refuge. I want to go briefly to the first notice and indicate, and it's very important, I think, from a factual standpoint, that the government contends that there was notice at that time. We disagree. We believe that there was some discussion that perhaps could have potentially placed a clout on title. But when the Pan Am flights were suspended, and the government appeared to have no further interest in that property, there was no reason for the family, the Felullo family, to believe at that time that there was some sort of clout on title. But I want to go past that today and note that even assuming that there was notice at that time, that notice was ultimately abandoned. Now the issue that we faced in the court below is that the district court ruled that unless we could prove that the 1934 executive order had been revoked, it would be impossible to demonstrate abandonment. In other words, and while the court stated in a sentence you cannot consider abandonment in a vacuum, at the same time the court said we will put it in a single box. And unless that single event was removed, then we could not have possibly met our burden. And now I'm going to, if I could, take that apart a bit. The first point is even the government concedes that the notice, if we assume that there was notice, was a series of acts. It was the 1934 executive order, according to the notice, it was some correspondence between the government and the Felullo family in 1937 and 1938. So it was a series of acts. So the second point is the, and the district court notes, it appears to be that the court merges actual ownership with notice of claim of interest, or rather claim of adverse interest. And that's an important distinction. Because on the one hand, in one part of the district court's decision below, the court states that it might, it would take an act of Congress to remove the clout on title, because suggesting, I assume, or presuming that the government actually owned the property, and that therefore we would never be able to meet, to establish abandonment. Could we start just with the claim of interest? Yes. What is it about the letter, I guess, the April 26, 1938 letter, which says this land is under the control and jurisdiction of the United States, and under the circumstances the showing, I guess, of entitlement made by the Felullo family is not sufficient to uphold their claim. I mean, that seems pretty clear that the United States is claiming an interest in the property, at least to the extent sufficient for the quiet title action. Why doesn't that meet the criteria for a claim of interest? Your Honor, I think that that one is a close call, and that's why I started out saying that perhaps the better and the more appropriate discussion here today is whether or not, assuming that was sufficient notice to place a clout upon title, whether or not it was subsequently abandoned. I believe that the only factual item I want to bring to the Court's attention is that this discussion, this correspondence, was initiated in response to the permission that the government gave to Pan Am to land flights in the Kingman Reef Lagoon, and when that ceased, it was reasonable, I believe it was reasonable, objectively reasonable for the family to assume that, well, false alarm. We thought there was a claim, but there wasn't. And that's, but I do believe that the more, that the discussion which, which, the discussion which I think is an easier issue for this Court to reach is that we established abandonment. I don't know, it's kind of tough for me because, because there's never been a retreat from the statement that the order will continue in full force and effect unless and until revoked by the President or by an act of Congress, neither of which has happened. So the fact that some lower level government employees over the years have indicated that, that they thought that the family owned the reef or whatever, how, how does that back off from the sort of clarity of the order? Let me answer that in, in, in three parts, Your Honor. The first part is that we have to look at what was the legal effect of the 1934 executive order. Did it convey ownership to the United States? Was it a, a It doesn't have to have. It just has to have put clout on, on title that you should reasonably have been, have been aware of. The, the, assuming that the 1934 executive order in combination with the correspondence and I think it really, and as, as the District Court noted, and I think all the cases support, you would not look to, you would not consider notice to be, have been accomplished in a, in a vacuum. We'd look at all the circumstances. So we would look at the 19, the 1934 executive order and the correspondence and the events around that and we would, we would then say that, that whatever the clout that was placed on the property, what, by the executive order, whatever that clout was, that it was ultimately abandoned and, and, and because it was a claim of interest, that, in other words, the executive order did not establish a, a legal right in property. What it did is it communicated something to the property owners, the, the Fuller-Leo family. Whatever was communicated to the family and what it communicated, I believe, is that the Navy was going to assert administrative and jurisdictional control over that property. It was not that the order standing alone does not say we, the United States, own the property and as a matter of fact, If you got a letter that, that said that about, about your residence, you'd probably go, good grief, what are they talking about? And you would go in and pounce on it immediately because it would scare you to death, if nothing else. Even if you thought you were right, that it didn't actually mean anything except as a, some kind of a temporary matter the Navy was going to administer your house. I mean, it would drive you nuts, right? Well, yes and no. I, I, I think the analogy is this. We were talking about 1934 and then, of course, 1938 and this was the march up to war. And during World War II, I think, and you have property that's located a thousand miles south of Hawaii and you have property that is obviously susceptible to enemy invasion, which was true. It was reasonable and fair for the family to step aside and remember there was a companion property that the Navy also took occupation of. After, during World War II took place, everybody in this country, including the Fuller-Leo family, lent their support and cooperation and perhaps even look forward to the Navy guarding and protecting their property, as did, as did others. Now, we have to look at what, so, so that's, but again, it's a cloud on title. Now, what happens later? We go into the 1940s. World War II is completed. The Palmyra decision is decided by the United States Supreme Court and the United States Supreme Court orders that that property be returned to the Fuller-Leo family. And lo and behold, from 1947 on, which was the year of that decision, the United States government not only showed no further interest at all in these two properties, companion, in these two companion properties, but also repeatedly recognized their private property ownership rights, identified to the Fuller-Leo family, two third parties, in writings known both to the government and to the public that the Fuller-Leo family were indeed the lawful private property owners of those properties. And in the 1990s, and actually we have, even earlier, I believe in 1979, but certainly in writing in the 1990s, we have written documents by the government, some communicated to the Fuller-Leo family, some, some actually just internal, indicating that the United States believed that the Fuller-Leo family owned the property. But more important, they communicated to the Fuller-Leo family, we believe you own the property because we want to buy it. And we start with the 1991 memorandum prepared by, by a government official. And in that it recognized that there would be some offer to purchase Kingman Reef or negotiate an acquisition of it. Then we move to 1997, where we have a written offer to purchase. We have declarations from a third party witnessing that the Fuller-Leo family, declarations indicating the Fuller-Leo family was repeatedly asked for permission to go there. In other words, during the 1990s, the government said if you want to go to Kingman Reef, you must ask the Fuller-Leo family. And then we move into an even, and of course, I think you noted, you said, well, what if a low-level government official writes a letter and says, well, gee whiz, you own it. That doesn't count. But it goes higher than that because the director of Fish and Wildlife also in an internal document ratified the position of the manager of the Hawaii office. The first person would be Mr. Smith, who wrote, we'd like to purchase the property. But the director of Fish and Wildlife Service in the October 3rd, 1997 proposal to establish the Kingman Reef Wildlife Refuge stated that, recognized in that document that the property would be acquired or purchased from the Fuller-Leo. First off, recognized in the first part that the Fuller-Leo family owned it and permission to go there should be obtained from the Fuller-Leo family. And then two pages into that document suggested that it would have to be acquired or purchased. So I think that it's not, you know, Your Honor, you've mentioned what happened in the cloud. But when you have 50 years, 50 plus years of ratification, confirmation, and affirming ownership, not just in internal documents unknown to others, but in documents to the Fuller-Leo family, in actions, and so forth, you see a shift that undoubtedly creates abandonment. Now, how would you articulate the test? Obviously, if the low-level civil service functionary sends out a letter that's confused, that's not enough. If it's someone who has the authority to, as the Eighth Circuit said, clearly and unequivocally say the United States, that's certainly sufficient. You want something in between, I assume. And how would you articulate that test? The test, as articulated, I believe, under Schultz and Michel, I think it's Those are easement cases. So we need to do this for a claimant property, not Well, the test articulated, I was going to say the test, I understand that the facts that meet the test have to be different in a fee simple case. But the test itself, I interest in property. And if I could, Your Honor, I think the test is the objectively good faith and reasonable belief of the property owner that the interest, the claim of adverse interest has been abandoned. That's the overall test. But then I think you've raised a very good point, which is, but wait, in an easement case, is that going to be a different test? Is that going to be a, what more evidence do I need to resolve the district court's concern, as in footnote 10, I believe, of the order, that there is a difference in degree, I believe, the district court suggested between fee simple and easement interest in property. But there would be, wouldn't there, logically, to show abandonment or a reasonable belief in abandonment? Because an easement is just sort of there. It can be overgrown. It can be whatever. Right. Whereas, if you're claiming possessory interest, fee simple interest, wouldn't it take a stronger showing of some sort? I don't think that it's stronger or weaker. I think it's different. In real property law, you look to the manifestations of the interest, the claim of interest in the property, and you also look to the manifestations of the abandonment of that claim of interest. Obviously, I think you pointed out correctly that it is probably easier to, it would be, let me actually just state the facts. I think it would make more sense. In a fee simple case, you would have to do more than suggest that the court is no longer, for example, in Schultz, no longer allowing or restricting access. I think that if we only came to the district court below and said that the Navy was no longer enforcing the Naval restrictive, the restricted, no one restricting access, if we said that was our only bit of evidence, I think we might have a potential problem because that wouldn't necessarily remove the cloud. But we provided much more than that. We talked, we provided evidence of eyewitnesses as well as writings demonstrating that the federal government communicated to the Fuller Leo family that they owned the property and that the, and that there were offers to purchase the property. And so I agree with both comments made that you, for a fee simple interest, you would have to show more, but I believe we did it. And the only last thing I would add is that the burden would be on the government under the legislative history for the quiet title. In other words, if, given the evidence that we showed, the government would have the burden, I believe, under the, under the Quiet Title Act to demonstrate that we did not present sufficient evidence of abandonment. Anything else? Okay. Thank you. Mr. Braybender. May it please the Court, Counsel. My name is Alan Braybender and I represent the United States of America. This morning I'd like to address the only issue that is legitimately before this Court, and that is, when did the investment companies claim accrue? And then, if necessary, I'll address this notion that a stale or time-barred claim can somehow be abandoned. First, as to the issue of accrual, the District Court correctly determined that the investment companies claim accrued in 1934, when President Franklin D. Roosevelt withdrew Kingman Reef from the public entry and placed it under the jurisdiction of the United States Navy. That President Roosevelt believed Kingman Reef to be a public land that was available for a public purpose should have put any reasonable landowner on notice of the United States' claim to Kingman Reef, as illustrated by the nearly identical cases from this Court that we cited in our brief, the Government of Guam case and the Gossett case. And certainly, the investment companies claim accrued no later than 1938, after a series of correspondence between the Navy and the investment company, in which the investment company's predecessors explicitly acknowledged the United States' asserted claim to Kingman Reef, and in which the Navy explicitly rejected any private property interest in Kingman Reef. Thus, because the United States has waived its sovereign immunity only for claims filed within 12 years of their accrual, this lawsuit, filed 70 years later, is barred by the United States' sovereign immunity, and the District Court correctly dismissed this case for a lack of subject matter jurisdiction. There are no other issues legitimately before this Court. The investment company attempts to avoid the sovereign immunity bar by invoking the Michael and Schultz Abandonment Rule. But the Michael and Schultz Abandonment Rule is inapplicable here, because the Michael and Schultz cases involve the government's right to deny access to property, which is a type of property interest that can be abandoned. Well, are you saying that if the United States said, we no longer claim an interest in this property, that that wouldn't constitute an abandonment, so that then the claim would have to accrue again? Well, it depends on who in the United States government said that. If Congress said we no longer claim an interest in the property, then yes, the government could have abandoned it. Or if a congressionally authorized official who Congress authorized to abandon public property said that, then yes. Why are you saying that Congress has to say we no longer have a claim of interest in this property? I mean, that's something different than saying, rejecting, we have a possessory right, we have title to this property, and now we're going to dispose of it. I mean, that's one type of action. And there you cite cases saying it has to be a congressionally authorized act. But here, it isn't a holding title to the property. All that's required under the Quiet Title Act is a claim of interest in the property, which is something quite different. That is true. But the Michael and Schultz Abandonment Rule, what it's really saying is the government may abandon a substantive right to deny access, so that a new right to access may have arisen in the plaintiff in the future based on a new set of facts. And I think the Michael case is illustrative of this. In Michael, there's a dispute between the Fish and Wildlife Service and the landowner, Mr. Michael, over the right to access portions of a National Wildlife Refuge. And this dispute was occurring in the 1960s, 70s, and early 80s. And thus, Mr. Michael's lawsuit, which was filed in 1992, would normally be barred under the Quiet Title Act, because these disputes occurring in the 60s would put a reasonable landowner on notice. But in the Michael case, there was an agreement reached in 1984 between the Fish and Wildlife Service and Mr. Michael, in which the Fish and Wildlife Service agreed to allow Mr. Michael access to the refuge in accordance with a 1970s letter. And the Michael court, just as the Schultz court, said that the government may have abandoned its right to deny access that it asserted in the 1960s and 1970s, when it entered into that 1984 agreement with Mr. Schultz, so that post-1984 agreement, when the government later reasserted a right to deny access to the property, Mr. Michael may have had a new substantive right to access, based on that 1984 agreement, that was detached from the claim made in the 1960s and 1970s, so that his new substantive right would not be time barred. So Michael and Schultz's test really stands for this simple proposition, I think, that the United States' sovereign immunity does not bar a new substantive claim from arising, based on a new set of facts, detached from the old set of facts, just because the plaintiff may have had an old claim that was time barred. But here we're talking about a different kind of substantive right, while the right to deny access that was at issue in Michael and Schultz could be abandoned, and a new substantive claim could arise in the future, here we're talking about a possessory interest in real property that, as a matter of law, cannot be abandoned, and thus a new substantive claim cannot arise in the future. Well, I understand easements are different than fee-titled property, but my question was, what's the support for your position that, in order to abandon a claim of interest or to disavow a claim of interest in the property, there must be a congressional act? Well, that is not only the government's position here, that's the holding of the United States Supreme Court in the United States v. California, in which California made arguments very similar to those made by the investment company here, and the Supreme Court flatly rejected it, and said that it was only Congress or congressionally authorized officials that can dispose of or abandon public property. Right, but here we're not talking about disposing of public property, we're talking about disavowing a claim of interest. So let's assume that the United States doesn't actually have title to Kingman Reef, and in looking through all the documents, I didn't see anything that either held or asserted that the United States had title to Kingman Reef. All I saw was a claim of interest, jurisdiction, possession, whatever it was. So with respect to a claim of interest, what supports your position that that requires a congressional authorization? Or is that just a rule that you would seek to have this court enunciate? Well, you know, I think United States v. California did announce that sort of rule. I mean, the arguments made by California are really no different in kind from the arguments made by the investment company here. So I would continue to assert that United States v. California supports our position. Putting the question just a little bit differently, I mean, you don't have to show title of property ownership on the one hand, you just have to show a clout. So why wouldn't the commensurate standard or question with respect to abandonment be you clouted the picture such that a reasonable person could figure that the government no longer had the interest that it asserted in the executive order series? Well, I think there are, I mean, the United States has continuously asserted an interest in Kingman Reef since at least 1934. The executive order from 1934 or 1931 or 1941 has never been repealed or otherwise revoked. The federal regulations applicable to Kingman Reef are active and ongoing. The operating instructions from the Chief of Naval Operations and the Commander-in-Chief of the Pacific Fleet remain. And there's been a number of historic correspondence between the Navy and persons interested in accessing Kingman Reef throughout the years. All of this evidence shows the United States has maintained a continuous interest or asserted a continuous interest in Kingman Reef to the exclusion of all others that has not abandoned it. And I would submit that this evidence continues to place a cloud on any title that any private party would assert to Kingman Reef. What's the source of the title that's claimed by the KRI, K-R-A-I? The source? What's the paper trail on their title? Do they have a patent? They do not have a patent, Your Honor. The United States has never recognized any private property interest. They had a beer bottle. Other than artifacts, is there a paper trail that shows a title somewhere on Palmyra and Kingman Reef? I think there may be a paper trail, but where the paper trail runs into a problem is that there has never been a land grant or any property interest recognized by any sovereign nation. Well, the suit to acquire a title, wouldn't you start out with a title to be quieted? I mean, if Kingman Reef people wanted to get title insurance, what would they start with on their claim? You know, I don't know the answer to that question, Your Honor. What happened to several Kingman Reef from Palmyra? They were a package deal at one time. No, I don't believe that they ever were a package deal. Well, there's some evidence that they were engaged, there was some claim that the Fullard Leo family had interest in both. Well, the Fullard Leo family certainly has told a number of people over the years that they own both Palmyra and Kingman Reef. Well, I could say I own Catalina Island, too, but what's the paper trail on it? Your Honor, where the paper trail runs into problems is their only asserted claim to Kingman Reef is as a result of the symbolic actions of Lorne Thurston in 1922, where he allegedly put something in a jar and said some magic words, which the investment company claims vested a private property interest in them or their predecessors, but that could not have conveyed any private property interest in Kingman Reef under any law then or now in existence. Well, if in 1934 the President issued an executive order asserting dominion and control over a coral reef out there, would that create a title in anybody or just an assertion of dominion and control by the United States government? Well, when President Roosevelt issued the executive order, he withdrew Kingman Reef from the public entry. What that means, it's a legally significant event. If something is available for public entry, it's available for homesteading, it's available for mining claims, it's generally available for the public to enter. When the government withdraws something from the public entry and reserves it for a certain purpose, it is no longer available for homestead claims or for mining claims. The national forests are withdrawn from the public entry and reserved as national forests. The national parks are withdrawn from the public entry and reserved as national parks. Here President Roosevelt withdrew Kingman Reef from the public entry because it was a public land at that time and reserved it for use by the United States Navy. And what that did is it should have put everybody, including the investment company's predecessors, on notice that the United States believed that Kingman Reef was a public land available for a public purpose. And because of that, the investment company's claim accrued. And it certainly accrued no later than 1938. And that is really the only question that is before this court. It isn't just a, okay, if the statute of limitations has run on the quiet tile thing, does one stop there or do you go ahead and consider abandonment? Well, the United States could not have abandoned Kingman Reef. Well, that's a factual assertion. Again, it seems to me neither who owns the title nor whether it was abandoned is before us. I mean, the question in each case is reasonable belief that what you think is wrong, basically. And so my question is, is it entirely right, as I heard you say, only one issue is before us? There is only one issue. Does the one issue include abandonment? No, because the government cannot abandon a possessory interest in Kingman Reef as a matter of law. So that issue should not be before this court. When Congress enacted the Quiet Title Act in 1972, it conditioned the waiver of sovereign immunity on this 12-year accrual period because it meant to cut off any action that accrued before 1960. Here, the investment company's claim accrued in the 1930s. This is exactly the type of stale claim that Congress intended to cut off when it enacted the Quiet Title Act, as the Supreme Court explains in detail in Block v. North Dakota. The abandonment issue is simply not before this court because the United States could not have abandoned Kingman Reef as a matter of law. That's our position, Your Honor. And unless this court has any other questions for me. Okay, thank you very much. Counsel abandoned about one minute of his time. So, uh... I'll go last, Your Honor. Your Honor, to address one thing. The issue of ownership is, I believe, not before this court because that issue was precluded below. The District Court said no discovery on ownership. We are not here to talk about that. We are here to talk about whether or not there is subject matter jurisdiction. And on that issue, the court specifically said, we will... In effect, you have an implicit assumption that the plaintiff owns the property when you go off to talk about subject matter jurisdiction and the statute of limitations. I think that is certainly built into the question posed. Now we turn to abandonment. But I want to go back very briefly. What did Congress intend in passing the Quiet Title Act? There was actually a debate, historically. I believe the government wanted to restrict access and Quiet Title actions. And the Senate and Congress wanted to expand it. And in doing so, in adopting and incorporating the Department of Justice memorandum in the legislative history, they expanded the statute of limitations to 12 years and also stated that once the plaintiff states in the pleadings and affirmatively states that there has been compliance with the statute of limitations, then the burden shifts to the government. And in this analysis, the government would have the burden to both establish notice and because abandonment is also part of the accrual question, the government would have the burden to establish abandonment. And when you weigh the evidence, we would be over the 51 percent mark. We really are out of time now. Thank you very much, counsel. Both of you. The matter just argued will be submitted.
judges: Goodwin, Rymer, Ikuta